IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHENER, | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.  11-746 |
| v. | ) | |
| | ) | |
| THE BUROUGH OF MOUNT OLIVER, ET AL. | ) | Chief Judge Gary L. Lancaster |
| | ) | |
| Defendants | ) | |
| | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiff lawsuit stems from her service as an appointed Councilwoman for the Borough of Mount Oliver in October 2007 and her elected service thereafter. Plaintiff was elected to a 4-year term, commencing January 1, 2008. Plaintiff served continuously as Councilwoman from her appointment in October 2007 through May 16, 2011, at which time she was removed from her publicly elected office by vote of the Borough Council.

This vote was unconstitutional. First, the vote failed to meet Pennsylvania's constitutional requirements for the removal of public officials, as specifically provided in Article IV § 7 of the Pennsylvania Constitution, the "Removal of Civil Officers" provision. Second, even if this vote did not violate Art. IV §7, the vote was the end result, and intended outcome, of the Defendants' organized misconduct specifically designed to silence Plaintiff's public criticism of Borough waste and corruption, and oust her from her elected post before her term expired.

Defendants' scheme to oust Plaintiff includes, but is not limited to, the use of police intimidation, the fabrication of criminal charges, and the discrimination of Plaintiff based on her gender. This misconduct supports multiple findings of personal and municipal liability against

the Defendants under § 1983, the Equal Protection Clause, and First Amendment of the United States Constitution.

## II.      SUMMARY OF THE FACTS

Plaintiff was appointed to serve as Councilwoman for the Borough of Mount Oliver in October 2007. Complaint at ¶ 10.  After her appointment, Plaintiff was elected to a 4-year term, commencing January 1, 2008. Plaintiff served continuously as Councilwoman from her appointment in October 2007 through May 16, 2011, at which time she was removed from her publicly elected office by vote of the Borough Council. Complaint at ¶ 10.

Prior to her removal, Plaintiff served on the Borough Finance Committee and reviewed the finances of the Borough. Complaint at ¶ 11. By the appointment of the Borough Counsel's President, Plaintiff also served as Chairperson of the Economic Development Committee. This committee met every month and Plaintiff was present at all meetings. Complaint at ¶ 12.

During her time in elected office, Plaintiff was an outspoken critic of corruption and misconduct by the Borough, its Councilmen and Councilwomen, and other employees and officers. This misconduct includes, but is not limited to, flagrant and brazen overpayments of inflated and false invoices submitted by Borough Council Solicitor, James Perich, Esquire. Complaint at ¶ 13. On several occasions Plaintiff publicly exposed such overpayment by Borough Council Secretary, Jo-Ann Malloy (wife of Borough Councilman, and Defendant herein, Patrick Malloy), to various other contractors and vendors who submitted invoices for services rendered to the Borough. Complaint at ¶ 14. Plaintiff also exposed financial abuses and misconduct by Borough Police via undocumented credit expenses, fraudulently obtained police employment contract concessions, and the gross excessiveness of police resource allocation for the improper purpose of facilitating personal relationships among police personnel. Complaint at ¶ 15.

With the goal of silencing her public expression of the Borough's waste, corruption, and wrongdoing, the Defendants repeatedly applied pressure, intimidated, and harassed Plaintiff. Complaint at ¶ 16. When such pressure failed to silence Plaintiff, the Defendants conspired to threaten, intimidate, oppress and harass Plaintiff through its police department. On multiple occasions, police officers presented themselves in uniform while off-duty to confront Plaintiff during Borough Council meetings. Complaint at ¶ 17. The Defendants also concocted false and malicious criminal charges against Plaintiff. These unfounded charges lacked probable cause and were fabricated through the Defendants' misuse of the Borough Police Department. Through the Police Department, the Defendants tampered with official police reports, fabricated evidence, and engaged in a wide-spread abuse of power in the pursuit of a politically craven agenda to silence and oust Plaintiff from elected office. Complaint at ¶ 18.

The above referenced threats, intimidation, oppression and harassment caused Plaintiff such great stress and anxiety, as medically documented, that she could no longer attend Borough Council meetings under those conditions. Complaint at ¶ 19, 20. As such, Plaintiff advised the Borough Council in January 2011 that she could no longer endure Borough Council meetings until such time as said threats, intimidation, oppression and harassment by the Defendants ceased. Nevertheless, Plaintiff continued to serve in her capacity as a Finance Committee member, Chairperson of the Economic Development Committee, and in all other respects of her elected office. Complaint at ¶ 19.

Despite Plaintiff's medically documented inability to attend Borough Council meetings, the Defendants instituted a campaign to oust Plaintiff from her elected office in April 2011. The Defendants cite Plaintiff's alleged "excessive unexcused absences from regular meetings, failure to participate in Council Committees and failure to act in her official capacity as a Member of

Council," in support of their actions. Complaint at ¶ 20. It should be noted that Defendant Smith failed to attend a single Borough Council meeting over a course of at least 8 months, and Defendant Obedoble missed 5 months of Borough Council meetings in 2008. Complaint at ¶ 21.

## III.   STANDARD OF REVIEW

The United States Supreme Court opinions in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and  <u>Ashcroft v. Iqbal</u>, ⸺ U.S. ⸺, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading. <u>Glover v. Udren</u>, CIV. 08-990, 2011 WL 1204050 (W.D. Pa. Feb. 28, 2011) <u>report and recommendation adopted,</u> CIV. 08-990, 2011 WL 1157233 (W.D. Pa. Mar. 29, 2011). This heightened form requires a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. <u>Id</u>. Courts should now utilize a two-part analysis when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. While a court must accept all of the complaint's well-pleaded facts as true, it may disregard any legal conclusions. <u>Id</u>. Second, a court is to decide whether the facts alleged in the complaint are sufficient to demonstrate the plaintiff has a "plausible claim for relief." <u>Iqbal</u>, 129 S.Ct. at 1950. The party moving to dismiss under Rule 12(b)(6) bears the burden of showing that no plausible claim for relief exists. <u>Hedges v. U.S.</u>, 404 F.3d 744 (3d Cir. 2005). This burden is great, for a claim is facially plausible when the plaintiff pleads facts that permit a court to draw a reasonable inference that the defendant could be liable for the malfeasance alleged. <u>Iqbal</u>, 129 S.Ct at 1949.

## IV.    ARGUMENT

### A.    THE THIRD CIRCUIT EXPLICITLY EXTENDS MUNICIPAL LIABILITY UNDER § 1983 WHERE A SINGLE VOTE OF A LEGISLATIVE BODY IMPOSES AN UNCONSTITUTIONAL DEPRIVATION UPON AN INDIVIDUAL.

In the present suit, there exist two—independent—sets of actions that give rise to liability under 42 U.S.C. § 1983. One set gives rise to personal liability against the individual defendants. The other set gives rise to municipal liability against the Borough of Mount Oliver. In following the structure of Defendants' Motion to Dismiss, Plaintiff will first discuss only those actions taken by Defendants in their legislative capacities. These actions are limited to the Borough Council vote to remove Plaintiff from her elected office before the expiration of its term.

42 U.S.C. § 1983 subjects to liability every person who under color of state law or custom deprives a citizen of his or her constitutional rights. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). A municipality may be held liable as a person under § 1983 when it unconstitutionally implements or enforces a policy or custom. Id. (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)); Santiago v. Warminster Tp., 629 F.3d 121, 134 (3d Cir. 2010).

The Third Circuit and Supreme Court have "consistently held that *a single decision of a properly constituted legislative body is an act of official policy that may subject the municipality to § 1983 liability*." Langford, 235 F.3d at 848 (citing Owen v. City of Independence, 445 U.S. 622 (1980); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 250-52 (1981) (emphasis added)). The Borough Council is a "properly constituted legislative body" and its decision to oust Plaintiff from office, by way of official vote on May 16, 2011, was "an act of official policy."

Contrary to the Defendants' first argument in its Motion to Dismiss, there is no such thing as a "long standing" requirement otherwise. Brief in Support of Defendants' Motion to Dismiss Plaintiff's Complaint  (ECF No. 20) at pp. 5-6. Instead, a complaint need only claim that a single decision or vote of a legislative body deprived the plaintiff of some constitutionally protected right. In <u>Langford</u>, the Third Circuit held that a municipality can be held liable under § 1983 for the singular act of passing its annual budget. In <u>Langford</u>, the plaintiffs alleged the municipality had restructured its annual budget to eliminate plaintiffs' positions in retaliation for their political activities and protected speech. Because their allegations involved deprivations of certain constitutionally protected rights, the Third Circuit allowed the plaintiffs to seek damages against the city under a theory of municipal liability.

Here, Plaintiff seeks to recover for the unconstitutional elimination of her employment by municipal officials. Like <u>Langford</u>, Plaintiff should be permitted to pursue her claim against the Borough of Mount Oliver under a theory of municipal liability. Contrary to Defendants' argument, Plaintiff repeatedly describes in her Complaint the "official policy" which supports her claim for municipal liability as the "illegal acts of the Borough Council that purportedly and prematurely removed Plaintiff from her duly elected term of office[.]" Complaint  at ¶¶ 11-18. In addition to other egregious conduct outlined in Plaintiff's Complaint, these "illegal acts" most notably include the Borough Council's vote of May 16, 2011 to remove Plaintiff from office. Plaintiff alleges this vote was in retaliation for her continued public expressions about local government waste, corruption, and wrongdoing. As the Third Circuit did in <u>Langford</u>, this Court should find that such retaliation clearly constitutes a constitutional deprivation and that Plaintiff should have the opportunity to establish her case against the Borough of Mount Oliver at trial.

Accordingly, the Court should deny Plaintiff's Motion to Dismiss on the grounds presented in section A of its Argument.

**B.     AN ILLEGAL COURSE OF CONDUCT DOES NOT FALL WITHIN THE DOCTRINE OF LEGISLATIVE IMMUNITY MERELY BECAUSE IT IS CONNECTED TO OR FOLLOWED BY THE VOTE OF A MUNICIPAL COUNCIL.**

Plaintiff will now address those actions taken by the individual Defendants in their non-legislative capacities. These actions do not include the Borough Council vote to remove Plaintiff from elected office, but instead concern the use of threats, harassment, and other pressure against Plaintiff in the months leading up to the Council vote.

Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected any citizen…or other person…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress." The term "persons" includes local officers acting pursuant to state law. Carver v. Foerster, 102 F.3d 96, 99 (3d Cir. 1996). However, the Supreme Court and Third Circuit have recognized that under most circumstances public officials are immune from personal liability under § 1983. In fact, the law is now clear that local legislators enjoy absolute immunity from personal liability under § 1983 for acts taken in their legislative capacities. Aitchison v. Raffiani, 708 F.2d 96 (3d Cir. 1983).

To be clear, "[i]t is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity." Ryan v. Burlington County, New Jersey, 889 F.2d 1286 (3d Cir. 1989). In Ryan, the Third Circuit implemented a two-part analysis for determining whether a municipal official's action was "legislative" in character. Carver, 102 F.2d at 100.

> To be legislative, the act must be (1) substantively legislative, such as 'policy-making of a general purpose' or 'line-drawing'; and (2) procedurally legislative, such as 'passed by means of established legislative procedures.'

Id. In Carver, the Third Circuit held that the individual defendant could not call upon the protections of legislative immunity for his conduct, which if proven at trial, "constituted retaliatory conduct targeted at specific individuals." Carver, 102 F.3d at 100. The defendant's retaliatory conduct in Carver included "**_harassment, threats, and retaliation_**." Id. (emphasis added). The Third Circuit held that this conduct occurred prior to, and independently from, a subsequent vote to terminate the plaintiff's employment positions. In light of this fact, the Third Circuit provided that "[a]n unconstitutional or illegal course of conduct by county government does not fall within the doctrine of absolute immunity merely because it is connected to or followed by a vote of a county board." Carver, 102 F.2d at 101.

Having severed the Carver defendant's "unconstitutional or illegal course of conduct" from the subsequent board vote, the Third Circuit then held that the defendant's retaliatory conduct failed the two-part legislative analysis outlined above. The conduct was neither substantively nor procedurally legislative. As a result, the Third Circuit struck down the defendant's legislative immunity defense and the plaintiffs were permitted to prove their case at trial.

The framework of the present case is identical to that presented to the Third Circuit in Carver, if not worse. Based upon the Carver analysis, it is clear that the individual Defendants are not entitled to legislative immunity for the retaliatory actions taken by them before voting to remove Plaintiff from her office. In the present action, the individual Defendants engaged in an unconstitutional and illegal course of conduct. As properly alleged in Plaintiff's Complaint, the individual Defendants:

(1) Repeatedly pressured (if not threatened, intimidated, oppressed and harassed)…to cease her public expression or opinions about government waste, corruption and wrongdoing in the Borough, Complaint at ¶ 16;

(2) Conspired to threaten, intimidate, oppress and harass Plaintiff through [the Borough] police department and various police officers [who] presented themselves in uniform while off-duty to confront Plaintiff during  Borough Council meetings, Complaint at  ¶ 17; and,

(3) Concocted false and malicious criminal charges against Plaintiff which were totally unfounded and lacked probable cause, through the misuse of the Borough Police Department by tampering with official police reports, fabricating evidence and engaging in a wide-spread abuse of power in the pursuit of a politically craven agenda directed and coordinated among the Defendants. Complaint at ¶ 18.

This retaliatory conduct, if proven at trial, is analogous to, if not more grievous than, the conduct described in <u>Carver</u>. The conduct of the individual Defendants is a malicious response to Plaintiff's whistleblowing of municipal misappropriation, waste, corruption, and wrongdoing. There is little doubt that the individual Defendants' illegal misuse of the Borough Police Department, if proven at trial, fails the two-part <u>Carver</u> analysis such that legislative immunity is inapplicable. Such misuse, as described above, is not legislative is substance. Likewise, it is very unlikely the Defendants properly called upon the police force through the legislative process. The Defendants' retaliatory—non-legislative—conduct, like the conduct described in <u>Carver</u>, does not invoke the protections of legislative immunity.

As properly alleged in Plaintiff's Complaint, the individual Defendants here engaged in a pattern of retaliatory conduct against Plaintiff. This conduct included calling upon members of the police force to intimidate Plaintiff at Borough meetings and fabricate erroneous criminal charges against her. It is this conduct for which Plaintiff files suit against the individual Defendants in their personal capacities. This retaliatory conduct is clearly beyond the scope of

any individual's legislative authority, as measured by the <u>Carver</u> analysis. As such, the Court should deny Plaintiff's Motion to Dismiss on the grounds presented in section B of its Argument.

### C. WHEN SPEAKING OUTSIDE THE CONTEXT OF HER GOVERNMENT EMPLOYMENT, A COUNCILWOMAN IS GUARANTEED THE SAME FIRST AMENDMENT LIBERTIES AS A PRIVATE CITIZEN.

"It is well settled that 'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 413 (2006) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 142 (1983)). The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." <u>Garcetti</u>, 547 U.S. at 417. In determining whether a public employee's speech is protected by the First Amendment, the Supreme Court has directed courts to engage in a two-inquiry analysis. Here, the inquires at issue are:

> The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question [then] becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

<u>Id</u>. (citing <u>Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.</u>, 391 U.S. 563 (1968)) (internal citations omitted).

Applying this two-inquiry analysis, the Supreme Court in <u>Garcetti</u> held that the respondent did not speak as a citizen, but in his official capacity as a state prosecutor. In arriving at this conclusion, the court considered the following:

1. The speech at issue occurred in a work memo;
2. The speech occurred in the office and was not public;
3. The speech concerned the subject matter of respondent's employment; and,

    4.  The speech occurred while the respondent was at work, "perform[ing] the tasks he was paid to perform[.]"<u>Garcetti</u>, 547 U.S. at 421.

The facts of the present case are wholly dissimilar from the facts presented in <u>Garcetti</u> and as such, require that this Court hold that the Plaintiff's speech occurred in her capacity as a private citizen.

As alleged in Plaintiff's Complaint, the speech at issue took place in the form of ***public exposure*** of municipal malfeasances. See Complaint at ¶¶ 14, 15. Plaintiff's speech did not occur in a work memo, nor did it take place in the private office workplace, as in <u>Garcetti</u>. Quite oppositely, Plaintiff's speech occurred outside the private workplace—in a public forum. As such, Plaintiff had a First Amendment right as a private citizen to speak out against her local government's corruption. She is not precluded from doing so merely because of her own role in that government. This is because "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." <u>Garcetti</u>, 547 U.S. at 420.

Plaintiff concedes that some of the corruption which she publicly exposed involved the subject matter of her employment, a factor considered in <u>Garcetti</u>. However, as recognized by the Supreme Court, this factor is not dispositive, for the "First Amendment protects some expressions related to the speaker's job." <u>Garcetti</u>, 547 U.S. at 421.

The last factor considered by the Supreme Court in <u>Garcetti</u> focuses on the fact that the respondent's speech was ***made pursuant to his job***. In the present case, Defendants call upon this verbiage to falsely label Plaintiff's speech as being made "pursuant to her duties as a duly elected Borough Councilwoman." Motion to Dismiss (ECF No. 20), at p. 13. In so incorrectly labeling, it is clear the Defendants have tried to trick the Court by egregiously misquoting a partial sentence from Plaintiff's Complaint.

The context provided in Plaintiff's Complaint, from which the Defendants pulled the above sentence fragment, clearly refers to the prospect of Plaintiff's future acts of public service—made "pursuant to her duties as a duly elected Borough Councilwoman." Complaint at ¶ 44. Instead, the Defendants have creatively "cut" the above quote from its proper *future* context, and "pasted" it to describe Plaintiff's *past* expression—the same expression for which Plaintiff now seeks redress under the First Amendment. By "cutting and pasting" this sentence fragment, the Defendants have tried pulling the wool over the Court's eyes by magically transforming Plaintiff's clear public expression into government speech. Because the Supreme Court has clearly established that such public expression is protected speech, and government speech is unprotected, it is imperative that this Court see through the Defendants' trickery, and distinguish Plaintiff's *past* public exposure of municipal corruption—made in her capacity as a private citizen—from her *future* public service—made "pursuant to her duties as a duly elected Borough Councilwoman."

The speech for which Plaintiff seeks redress under the First Amendment was made by Plaintiff while acting in the capacity of a private citizen. Although Plaintiff made some critical remarks during Borough Council meetings, she was often silenced by the threats and intimidation of fellow members of council and off-duty police officers. As such, Plaintiff repeatedly found herself exposing the municipality's corruption in the public, speaking as a private citizen. **This speech was not "made pursuant to her duties as a duly elected Borough Councilwoman."** It is this publicly critical speech for which Plaintiff alleges she was wrongfully ousted from office by the Defendants. This speech is protected. According to the Supreme Court's analysis in <u>Garcetti</u>, Plaintiff therefore has properly presented a First Amendment claim

for which relief may be granted. As such, the Court should deny Plaintiff's Motion to Dismiss on the grounds presented in section C of its Argument.

**D.      53 P.S. § 45904 VIOLATES ARTICLE VI § 7 OF THE PENNSYLVANIA CONSTITUTION BECAUSE IT DOES NOT REQUIRE THAT CAUSE FOR REMOVAL BE SHOWN IN ALL INSTANCES BEFORE A MEMBER OF COUNCIL IS REMOVED FROM OFFICE.**

The constitutional issue presented by 53 P.S. § 45904 in this case is the same as that previously presented to the Supreme Court of Pennsylvania in <u>South Newton Tp. Electors v. South Newton Tp. Sup'r, Bouch</u>, 838 A.2d 643 (Pa. 2003). In <u>South Newton</u>, the Court was tasked with determining "the extent to which the removal provision in Article VI, § 7 [of the Pennsylvania Constitution] is exclusive and invalidates statutory pronouncements governing the removal of elected civil officials." <u>South Newton</u>, 838 A.2d at 645. As the Pennsylvania Supreme Court did in <u>South Newton</u>, and has done in numerous other opinions, this court should strike down 53 P.S. § 45904, the Borough of Mount Oliver's statutory removal clause, because it does not require "cause" for removal and therefore violates Article VI § 7.

Article VI § 7, "Removal of Civil Officers," provides:

All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

Pa. CONST. art. VI § 7.

On several occasions, the Supreme Court of Pennsylvania has held that although the legislature may provide alternative methods of removal to the provision, Article VI § 7

13

"establishes in no uncertain terms that elected civil officers may be removed from office only for cause. So long as they 'behave themselves well,' said officers 'shall hold their offices.' 'Removal is the penalty for misbehavior.'" <u>Rizzo</u>, 367 A.2d at 240-45 (quoting <u>Bowman's Case</u>, 74 A. 203 (1909)).

In light of the bar clearly set by Article VI § 7, and firmly recognized by the Pennsylvania Supreme Court, "[a] removal scheme which is premised on something less is unconstitutional and void." <u>Rizzo</u>, 367 A.2d at 246. 53 P.S. § 45904 falls drastically short of the high bar set by Article VI § 7 because it does not require Cause be shown in all instances before removing a civil officer prior to the natural expiration of her term.

53 P.S. § 45904, "Right of council to declare seat of member vacant for failure to attend meetings, etc., provides:

> If any person, having qualified as a member of council, shall neglect or refuse to attend two successive regular meetings unless detained by sickness, or prevented by necessary absence from the borough, or if in attendance at any meetings shall neglect or refuse to vote or by withdrawal from council or otherwise refuse to act in the person's official capacity as a member of council, the borough council, acting without such person, may declare the person's office as a member of council vacant, and may fill such vacancy as provided in section 901 of this act. For such actions a majority of the remaining members of the council shall constitute a quorum.

> No such office shall be declared vacant for failure to attend meetings of the council until the holder thereof shall have been given opportunity of hearing before the remaining members of the council, at which time he shall show cause why he shall not be removed. He shall be given at least ten days' written notice of the time and place of such hearing.

53 P.S. § 45904.

Under § 45904, a civil officer may be removed for events which fall drastically short of the "cause" required by the Pennsylvania Supreme Court for removal. Under § 45904, a removal

vote may be triggered any time a member of council fails to "attend two successive regular meetings unless detained by sickness, or prevented by necessary absence from the borough." 53 P.S. § 45904. This standard is clearly inconsistent with Pennsylvania courts, as illustrated by the Supreme Court of Pennsylvania in In re Shoaf, 88 A.2d 871, 873 (Pa. 1952). In In re Shoaf, the Supreme Court of Pennsylvania provided that "[w]hen the people of any municipality, in a duly constituted election, select certain individuals to conduct their local government, those representatives of the people may be removed from office ***only upon showing of a perverseness which amounts to criminally or culpable indifference to their official duties***." In re Shoaf, 88 A.2d at 872-73 (emphasis added) (also quoted in Muncy Creek Tp. Citizens Committee v. Shipman, 573 A.2d 662 (Pa. Commw. Ct. 1990); Greenberg, et al. v. Buckingham Township Supervisors, 1974 WL 43023 (Pa. Commw. Ct. 1974); and In re Birmingham Tp., Delaware County, 597 A.2d 253 (Pa. Commw. Ct. 1991)).

The "culpable indifference to official duties" standard outlined in the opinions of numerous Pennsylvania courts reflects the notion that "[t]here are certain mandatory functions required of township supervisors, the failure to perform which will subject them to removal." In re Shoaf, 88 A.2d at 873. However, § 45904 completely ignores the reality that these official duties and mandatory functions can be competently and successfully performed by a member of council who is absent for "two successive regular meetings" for reasons unmentioned in the provision—such as intimidation, threats, and harassment. Such is the case at hand.

In the present case, Plaintiff was removed from her elected office because her conduct neatly fit the "absent for two successive regular meetings" provision of § 45904. As provided in the Defendants' Motion to Dismiss, Plaintiff's seat "was declared vacant because it was vacant— she didn't appear at any council meetings." Motion to Dismiss (ECF No. 20) at p. 13. However,

this provision does not consider the reasons that, if Plaintiff were allowed to prove at trial, would unquestionably justify her absence. These reasons include the Defendants' pattern of intimidation, threats, and harassment described throughout Plaintiff's Complaint. Nor does the provision of § 45904 consider Plaintiff's ability to perform her official duties and mandatory functions in light of her absence. After all, this is the real test outlined by Pennsylvania courts in assessing whether cause exists to remove a civil officer. Had § 45904 called for such an analysis, as clearly required by Pennsylvania case law, the Defendants would have realized they lacked cause for a vote of removal. This is because Plaintiff:

1. Continued running her committees, Defendant's Motion to Dismiss, at ¶ 13;
2. Continued to serve in her capacity as a Finance Committee member, Complaint at ¶ 19;
3. Continued to serve as Chairperson of the Economic Development Committee, Complaint at ¶ 19; and,
4. Continued to advise the Borough Council pursuant to her duties as a duly elected Borough Councilwoman. Complaint at ¶ 19.

Because § 45904 fails to call for such a substantive analysis, and instead permits a vote for removal whenever a member of council misses two meetings without a doctor's note, the section must be struck down as unconstitutional.[1] § 45904 does not live up to the "for cause" requirement of Article VI § 7, as consistently upheld under Pennsylvania law. For these reasons, the Court should deny Defendants' Motion to Dismiss on the grounds presented in section D of its Argument.

The Court should also strike down Defendants' Motion to Dismiss on the grounds presented in section D of its Argument because the Borough Council waived its right to enforce

---

[1] Although Plaintiff maintains that § 45904 violates Article VI § 7 of the Pennsylvania Constitution, Plaintiff should prevail even if this Court disagrees. This is because Plaintiff's absence stemmed from her "medically documented need" to avoid the deeply personal harassment and intimidation she regularly experienced at the hands of the Defendants. Complaint at ¶ 20. As such, Plaintiff's medical detainment excused her four absences, as permitted by § 45904, and Defendants' vote for her removal was illegal.

the "two successive absences" rule of § 45904. As alleged in Plaintiff's Complaint, and at the time of its filing, Defendant Smith had not attended a Borough Council meeting in at least eight (8) months. Complaint at ¶ 21. Likewise, Defendant Obedoble was absent for five (5) months of Borough Council meetings in 2008. Complaint at ¶ 21. Each of these absences—of eight and five months—is longer than that period of time which Defendants' cited in justification for invoking the removal vote provision of § 45904 against Plaintiff. As provided in Defendants' Motion to Dismiss, Plaintiff was absent only four (4) months before the Borough Council wrongfully ousted her through a § 45904 vote. Motion to Dismiss (ECF No. 20), at p. 13. Having not invoked the "two successive absences" rule of § 45904 against Defendants Smith and Obedoble, the Borough Council was effectively barred from invoking it against Plaintiff. As such, Defendants' application of the § 45904 vote was unconstitutional and the Court should deny section D of Defendants' Motion to Dismiss.

**E.    PLAINTIFF'S COMPLAINT CLEARLY SATISFIES, FOR THE PURPOSES OF SURIVING A RULE 12(b)(6) MOTION TO DISMISS, THE MCDONNELL DOUGLAS FRAMEWORK FOR GENDER DISCRIMINATION.**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2. A plaintiff may prevail on a Title VII gender discrimination claim by demonstrating she suffered disparate treatment because her membership in a protected class. In her Complaint, Plaintiff alleges she suffered disparate treatment on the basis of her sex.

To withstand a motion to dismiss on a disparate treatment claim, a plaintiff must establish that her membership in a protected class "played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." Monaco v. Amer. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004). "A plaintiff may meet this burden with either direct evidence, or circumstantial evidence." Terrell v. City of Harrisburg Police Dept.,

549 F.Supp.2d 671, 680 (M.D. Pa. 2008) (internal citations omitted). In the instant case, Plaintiff

has properly alleged circumstantial evidence in support of her gender discrimination claim.

In considering a disparate treatment claim supported by circumstantial evidence, a court

must consider the following factors, as outlined by the Supreme Court in <u>McDonnell Douglas</u>

<u>Corp. v. Green</u>, 411 U.S. 792 (1973):

1. The plaintiff is a member of a protected class;
2. The plaintiff was qualified for the position the plaintiff held or sought;
3. The plaintiff suffered an adverse employment action; and
4. The circumstances of the adverse employment action give rise to an inference of discrimination.

<u>Connors v .Chrysler Fin. Corp.</u>, 160 F.3d 971, 974 (3d Cir. 1998); <u>Johnson v. Keebler-Sunshine</u>

<u>Biscuits, Inc.</u>, 214 Fed.Appx. 239, 240 (3d Cir. 2007).

"The plaintiff's prima facie case of discrimination is not intended to be onerous, rigidly

applied or difficult to prove." <u>Dean v. Specialized Sec. Response</u>, 2011 WL 3734238 (slip

opinion), *8 (W.D. Pa. Aug. 24, 2011) (citing <u>Texas Dept. of Community Affairs v. Burdine</u>,

450 U.S. 248, 253 (1981)). "The prima facie case is only meant to allow a court to eliminate the

obvious and lawful reasons that a defendant acted as they did with respect to the termination of

plaintiff's employment." <u>Id</u>. In light of the foregoing, this Court should afford Plaintiff the

opportunity to prove her gender discrimination claim at trail.

Plaintiff meets the first prong of the McDonnell Douglas analysis. As a woman, she is a

member of a protected class—"sex"—under Title VII.

To meet the second prong of the McDonnell Douglas analysis, courts place the burden on

a plaintiff to show she is qualified for the position in question. The present case, however, is not

ordinary. Plaintiff's position was an elected-for public office. Her qualifications for the position

were presented to the general public of Mount Oliver and accepted by them in 2007, when

Plaintiff was elected to a 4-year team on the Borough Council. Complaint at ¶ 10. Her qualifications should therefore be presumed by this Court from the democratic process relied upon by the people of Mount Oliver to select their government representatives.

Plaintiff also included in her Complaint a number of allegations supporting her qualifications as a member of the Borough Council. As alleged, Plaintiff was responsible for fastidiously reviewing the finances of the Borough. This responsibility came easily to Plaintiff, as she "possesses vast experience in the private sector managing a finance company." Complaint at ¶ 11. Because her obvious financial qualifications, Plaintiff was appointed as Chairperson of the Economic Development Committee. This committee met every month, and Plaintiff was present at all meetings. Complaint at ¶ 12. In light of the foregoing, it is clear that Plaintiff's allegations satisfy the second prong of the McDonnell Douglas analysis.

The third prong of the McDonnell Douglas analysis requires that a plaintiff have suffered an adverse employment action. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). Here, Plaintiff was wrongfully ousted from her elected position as a member of the Borough Council. In Dean, the plaintiff was terminated from his position. District Judge Conti wrote that this termination obviously "altered his compensation and affected his status as an employee. Termination from employment is materially adverse[.]" Dean at *9. Accordingly, it is clear Plaintiff satisfies the third prong of the McDonnell Douglas analysis.

The fourth and final prong of the analysis "requires that an otherwise similarly situated person outside of the protected class received more favorable treatment." Id. "Similarly situated employees are those who have been subject to the same standards and have engaged in the same conduct without any differentiating circumstances that would distinguish the employer's treatment of them." Id (citing Terrell, 549 F.Supp.2d 671).

In the present case, Defendants allege Plaintiff, who is female, was ousted from elected office pursuant to 53 P.S. § 45904 solely because "she [Plaintiff] didn't appear at any council meetings for four months." Motion to Dismiss at p. 13. The Defendants contend that this four-month absence at Borough Council meetings was the only grounds for Plaintiff's removal from office. However, as properly alleged in Plaintiff's Complaint, several other male members of the Borough Council have been absent for periods of time longer than four months. In fact, at the time Plaintiff's Complaint was filed, Defendant John Smith had not attended a Borough Council meeting in at least eight (8) months—twice as long as Plaintiff's absence. Complaint at ¶ 21. Likewise, Defendant Dennis Obedoble missed five (5) months of Borough Council meetings in 2008. Complaint at ¶ 21.

The Defendants might try defending this clearly improper differentiation in treatment by alleging Defendant Smith and Obedoble were ill during their prolonged absences. However, this allegation would make no difference, as Plaintiff too had a "medically documented need" excusing her absence. Complaint at ¶ 20.

Neither Defendant Smith nor Obedoble was ousted from office, as was Plaintiff, despite the fact their absences—8 months and 5 months, respectively—were longer than the four months during which Plaintiff was too frightened and medically unable to attend council meetings. The only distinction between Plaintiff and Defendants Smith and Obedoble is Plaintiff's membership in a protected class. While Plaintiff is woman, Defendant's Smith and Obedoble, like most of the other members of the Borough Council, are men. This distinction therefore satisfies the fourth prong of the McDonnell Douglas analysis, at least inasmuch that this Court should permit Plaintiff the opportunity to prove her case of gender discrimination at trial. This is especially true in light of 29 C.F.R. § 1601.34, which provides that the Federal Rules of Civil Procedure "shall

be liberally construed to effectuate the purpose and provisions of Title VII[.]" As such, the Court should deny the Defendant's Motion to Dismiss on the grounds presented in section E of its Argument.[2]

Respectfully submitted,

BY:   /s/Lawrence H. Fisher
Lawrence H. Fisher
Attorney for Plaintiff
Cohen and Willwerth, P.C.
One Oxford Centre
301 Grant Street, Suite 4300
Pittsburgh, PA 15219
(724) 986-9785 tel
(215) 887-8732 fax
Lawfirst@comcast.net
PA ID #67667

---

[2] Plaintiff's prayer for punitive damages should be construed as applying to the individual Defendants only.